UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JAMES LEE,                                                                Civil Action No.


                            Plaintiff,


            -against-                                                     **COMPLAINT**

RIVERBAY CORPORATION; RESIDENTIAL
MANAGEMENT GROUP, LLC d/b/a DOUGLAS
ELLIMAN PROPERTY MANAGEMENT;
NOEL ELLISON;WARREN MITCHELL,
INELLE COOPER, and ROBERT KLEHAMMER

                                                                         Plaintiff Demands a Trial
                                                                                By Jury
                            Defendants.
--------------------------------------------------------------------X

        Plaintiff, JAMES LEE, (hereinafter referred to as "Plaintiff" or "LEE"), by and through his

attorneys, **DEREK SMITH LAW GROUP, PLLC,** as and for Plaintiff's Complaint in this action

against RIVERBAY CORPORATION; RESIDENTIAL MANAGEMENT GROUP, LLC d/b/a

DOUGLAS ELLIMAN PROPERTY MANAGEMENT; NOEL ELLISON; WARREN

MITCHELL; INELLE COOPER; and ROBERT KLEHAMMER, (hereinafter collectively

referred to as "Defendants"), respectfully alleges as follows upon information and belief:

## NATURE OF THE CLAIMS

1.  This action is brought to remedy, *inter alia*, Defendants' unlawful discrimination against

    Plaintiff with respect to his employment on the basis of race, color, and national origin, along

    with a hostile work environment, retaliation as a result of Plaintiff's opposition to these

    unlawful practices, and Defendants' wrongful termination of Plaintiff as a result of his

    opposition to these unlawful practices. Through their unlawful and discriminatory conduct,

Defendants violated, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e. et. seq. ("Title VII"), 42 U.S.C. §1981, New York Executive Law, § 290, et seq. ("NYSHRL"); the Administrative Code of the City of New York §8-107 et seq. ("NYCHRL"); and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action involves federal questions, because the causes of action asserted herein arise in part under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. seq. ("Title VII"), and 42 U.S.C. § 1981 ("1981"), to remedy violations of the laws of the State and City of New York based upon federal questions and the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated, retaliated, and unlawfully terminated on the basis of his race, color, and national origin, as well as a hostile work environment.

3. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2021, against RIVERBAY CORPORATION and RESIDENTIAL MANAGEMENT GROUP, LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT.

5.  Plaintiff received a notice of right to sue letter against RIVERBAY CORPORATION on June 3, 2022, and a notice of right to sue letter against RESIDENTIAL MANAGEMENT GROUP, LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT on June 6, 2022.

6.  Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving both notice of right to sue letters.

7.  Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

**PARTIES**

8.  Plaintiff is a Korean American resident of Dutchess County, New York.

9.  At all times material, RIVERBAY CORPORATION (hereinafter referred to as "Riverbay Corporation") is a domestic corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

10. At all times material, RESIDENTIAL MANAGEMENT GROUP, LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT (hereinafter referred to as "Douglas Elliman") is a foreign limited liability company duly existing by the virtue and laws of the State of New York that does business in the State of New York.

11. At all times material, Riverbay Corporation and Douglas Elliman were either joint employers or a single integrated employer of Plaintiff.

12. At all times material, Plaintiff was employed by Riverbay Corporation and Douglass Elliman as their Associate General Counsel.

13. At all times material, Noel Ellison (hereinafter referred to as "Ellison") was and is the General Manager at Defendant Riverbay Corporation. Ellison held supervisory authority, controlling many of Plaintiff's job duties.  Ellison held the power to hire and fire Plaintiff.

14. At all times material, Warren Mitchell (hereinafter referred to as "Mitchell") was and is the Assistant General Manager at Defendant Riverbay Corporation. Mitchell held supervisory authority, controlling many of Plaintiff's job duties.  Mitchell held the power to hire and fire Plaintiff.

15. At all times material, Inelle Cooper (hereinafter referred to as "Cooper") was and is the Director of Human Resources at Defendant Riverbay Corporation. Cooper held supervisory authority, controlling many of Plaintiff's job duties. Cooper held the power to hire and fire Plaintiff.

16. At all times material, Robert Klehammer (hereinafter referred to as "Klehammer") was the Vice President/Managing Director at Douglas Elliman, and was and is the Executive General Manager at Defendant Riverbay Corporation.  Klehammer held supervisory authority, controlling many of Plaintiff's job duties. Klehammer held the power to hire and fire Plaintiff.

17. Upon information and belief, at all times relevant to this Complaint, Riverbay Corporation and Douglas Elliman both meet the definition of an "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

18. Around February 26, 2018, Defendants hired Plaintiff as their Associate General Counsel.

19. A few days later, while Plaintiff and Defendant Riverbay Corporation's Director of Legal Department Michael Munns ("Munns") were waiting to enter into a meeting with Defendant Riverbay's Corporation's Executive General Manager Klehammer, Defendant Riverbay Corporation's Administrative Assistant to Klehammer, Lanor Keitt ("Keitt"), told Plaintiff, "YOU KNOW, YOU LOOK JUST LIKE BRUCE LEE."

20. Despite his supervisory authority and obligations, Munns refused to acknowledge the

discriminatory comment and failed to take any reasonable or immediate action to help combat the hostile work environment.

21. Around June 2018, during a collective bargaining agreement negotiation between Defendant Riverbay Corporation and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ Union Representatives, Defendant Riverbay Corporation's General Manager Noel Ellison ("Ellison") stated, "I WANT BLACK EMPLOYEES" to express his preference for certain race of employees at Riverbay Corporation.

22. Beginning October 2018, Defendant Riverbay Corporation's Assistant General Manager Warren Mitchell ("Mitchell") started asking Plaintiff why he did not own a dry-cleaning business like other Korean people before erupting in laughter at Plaintiff's expense.

23. Unfortunately, these types of racist and discriminatory remarks continued throughout the duration of Plaintiff's employment because Defendant Riverbay Corporation manages three shopping centers which include Korean commercial tenants in the dry-cleaning business.

24. Therefore, whenever the topic of dry cleaning came up, Defendant Riverbay Corporation's Assistant General Manager Mitchell asked Plaintiff why he did not own a dry-cleaning business like other Korean people who he claimed were Plaintiff's "PEEPS," to Plaintiff's horror and humiliation.

25. Around October 2018, while attending a weekly meeting with Defendant Riverbay Corporation's Director of Legal Department Munns and Defendant Riverbay Corporation's Executive General Manager Klehammer, Plaintiff witnessed Klehammer refer to two (2) African American staff members with Defendant Riverbay Corporation's Legal Department, Steven Phillips and Kerrie-Ann Sutherland, as "UNDERLINGS."

26. In contrast, Klehammer never referred to Caucasian staff members as "UNDERLINGS" throughout the duration of Plaintiff's employment.

27. Around December 2018 and continuing throughout the duration of Plaintiff's employment, Defendant Riverbay Corporation's Assistant General Manager Mitchell began calling Plaintiff "BRUCE LEE" whenever he passed Plaintiff in the hallway or in the shopping center at Bartow Mall.

28. Around July 2019, as Plaintiff entered the room for a Board meeting, Defendant Riverbay Corporation's Assistant General Manager Mitchell told Defendant Riverbay Corporation's Director of Parking and Leasing Danielle O'Conner ("O'Conner"), that Plaintiff used to work with "KOREAN DRY CLEANERS" before laughing hysterically.

29. Around July 2019, Plaintiff attended an executive meeting with Defendant Riverbay Corporation's Executive General Manager Klehammer who told everyone present at the meeting, that in his previous management job he had to deal with "DIRTY CHINESE RESTAURANT OWNERS" who would drag their garbage on the sidewalk and force him to confront them and tell them to "CLEAN UP THIS SHIT."

30. Further, Klehammer complained that "CHINESE PEOPLE ARE THE DIRTIEST TENANTS AND WHEN YOU TELL THEM TO CLEAN THEIR SHIT UP, THEY ALL OF A SUDDEN ACT LIKE THEY DON'T SPEAK ENGLISH."

31. Around January 2020, Plaintiff attended a meeting with Defendant Riverbay Corporation's Executive General Manager Klehammer and Defendant Riverbay Corporation's Director of Legal Munns. At that meeting, Munns mentioned Defendant Riverbay Corporation's Human Resources Benefits Manager Trenise Myrie ("Myrie").  In response, Klehammer responds, "TYPICAL JAMAICAN, THEY CAN NEVER ADMIT THEY ARE FUCKING WRONG."

32. Around February 14, 2020, Plaintiff was in a meeting with Defendant Riverbay Corporation's Executive General Manager Klehammer with Defendant Riverbay Corporation's Director of Risk Management John Lowe ("Lowe"). In the middle of their meeting, Defendant Riverbay

Corporation's Assistant General Manager Mitchell opens the door and enters with Defendant Riverbay Corporation's Director of Parking and Leasing O'Conner. At which point, Mitchell standing by the door looks at Plaintiff and states, "LOOK AT BRUCE LEE OVER HERE, LOOK AT WHAT HE LOOKS LIKE WHEN HE SMILES, LOOK AT HIS FACE" before laughing hysterically in front of everyone and leaving the room.

33. Afterwards, Defendant Riverbay Corporation's Executive General Manager Klehammer looked at Plaintiff, without acknowledging or apologizing for the blatant racist comment, and continued the meeting as if nothing ever happened.

34. Around March 2020, in anticipation of the city-wide shutdown due to the Covid-19 pandemic, Defendant Riverbay Corporation's Executive General Manager Klehammer held ongoing meetings with department heads and supervisors in order to coordinate Defendant Riverbay Corporation's pandemic staffing.

35. However, despite the fact that Plaintiff should have been present at these meetings as the only supervising attorney in the Legal Department with Defendant Riverbay Corporation's Director of Legal Department Munns out of the office, he was specifically excluded and deliberately not invited to attend any of these meetings.

36. Around March 20, 2020, Defendant Riverbay Corporation's Assistant Director of Finance Averil James-Bonnette ("James-Bonnette') , while standing in front of Defendant Riverbay Corporation's Manager of Office Supplies Valerie Stone ("Stone"), and Defendant Riverbay Corporation's File Room Clerk Tanya Cruz ("Cruz"), said that "EVERYONE NEEDS TO STAND SIX (6) FEET AWAY FROM ME, ESPECIALLY HIM" while pointing her index finger at Plaintiff which lead Cruz to break out in laughter.

37. Around April 2020, Plaintiff complained to Defendant Riverbay Corporation's Director of Legal Munns that Defendant Riverbay Corporation's Assistant Director of Finance James-

Bonnette inappropriately associates Plaintiff with Covid-19 in front of co-workers due to his Asian heritage.

38. However, despite their obligations to the contrary, Defendants failed to take any reasonable or immediate action to help combat the hostile work environment.

39. Around early July 2020, Plaintiff complained to Defendant Riverbay Corporation's Director of Human Resources Inelle Cooper ("Cooper") that he is being called racist names including "BRUCE LEE" during executive meetings by upper Management.

40. Additionally, Plaintiff complained to Defendant Riverbay Corporation's Director of Human Resources Cooper that he did not want Defendants to terminate his employment for complaining about discrimination in light of their implicit policy of terminating employees that complain about discrimination and harassment.

41. However, despite their obligations to the contrary, Defendants failed to take any reasonable or immediate action to help combat the hostile work environment.

42. As Associate General Counsel, Plaintiff directly witnessed Defendants' pattern and practice of conducting perfunctory investigations that routinely failed to substantiate the discrimination/harassment and instructing the employee to return to their workstation. Thereafter, if the employee kept complaining, Defendants would coordinate ways to terminate the employee under pretextual disciplinary actions.

43. By way of example only, in 2019, Plaintiff had conducted an internal investigation regarding an employee's NYS Human Rights complaint of sexual harassment, namely Kimberly Hutchinson ("Hutchinson"). After Plaintiff's investigation substantiated Hutchinson's claim and Plaintiff reported his findings to Management, Defendant Riverbay Corporation's Director of Human Resources Cooper became irate and called Plaintiff into her office and threatened to terminate him because he refused to follow Defendants' practice of unsubstantiating and

terminating complainants.

44. Around November 2020, Plaintiff received a minor salary increase similar to non-Korean colleagues that scored significantly lower than Plaintiff on their annual performance evaluations.  However, non-Korean colleagues with performance evaluation scores similar to or less than Plaintiff received much greater salary increases than Plaintiff.

45. Around December 21, 2020, in light of a 200% increase in holdover cases managed by Plaintiff, Defendants agreed to add another staff member to the Legal Department by taking a staff member from the Cooperative Services Offices ("CSO") Department. In response to this decision, Defendant Riverbay Corporation's Assistant General Manager Mitchell decided to award Defendant Riverbay Corporation's Director of CSO Vanessa Aldea ("Aldea") a salary increase, but Defendants did not award Plaintiff any increase in salary.

46. Around April 2021, during a phone conference with staff members, Defendant Riverbay Corporation's Executive General Manager Klehammer said that he had problems with Korean tenants at his prior management job because their food "Kimchi" is "STINKY." Further Klehammer bemoaned the fact that he could not evict Korean tenants because they were simply "COOKING THEIR ETHNIC FOOD."

47. On June 9, 2021, Plaintiff entered the board room for a meeting prior to the WebEx video camera being turned on for the Board Members to join in.  However, shortly after sitting next to Defendant Riverbay Corporation's General Manager Ellison, Defendant Riverbay Corporation's Assistant General Manager Mitchell looked over to Plaintiff and stated aloud, "LOOK HOW DARK HE IS, HE REALLY LOOKS SOUTH KOREAN NOW." Thereafter, the entire room, including, but not limited to, Mitchell, Ellison, Defendant Riverbay Corporation's Executive General Manager Klehammer, and two (2) principles of Merritt Engineering Consultants broke out in laughter to Plaintiff's utter shock and humiliation.

48. After the Board meeting, Plaintiff walked by the Management Office and Defendant Riverbay Corporation's Assistant General Manager Mitchell again disparaged Plaintiff by saying, "LOOK AT HIM, LOOK HOW DARK HE LOOKS, HE REALLY LOOKS SOUTH KOREAN."

49. Thereafter, Mitchell, Defendant Riverbay's Corporation's Executive General Manager Klehammer, and Defendant Riverbay Corporation's General Manager Ellison broke out in a roar of laughter. After the laughter died down, Klehammer said, "I HOPE WE DIDN'T GIVE [PLAINTIFF] SOMETHING TO REPORT TO HR."

50. Quite shockingly, in response, Defendant Riverbay Corporation's General Manager Ellison held out his left hand to gesture a paper and his right to gesture a pen and says, "THE LAST COMMENT WAS $1.1 MILLION AND NOW THIS COMMENT IS $1.2 MILLION."

51. Afterwards, the three of them again burst out in uncontrollable laughter leaving Plaintiff feeling completely degraded and humiliated.

52. Around June 30, 2021, Plaintiff went to Defendant Riverbay Corporation's General Manager Ellison's office to complain about the aforementioned incident. However, while Ellison readily admitted that the discriminatory comments were "cold" and "inappropriate," no formal investigation and/or disciplinary action(s) followed.

53. Thus, Defendants again failed to take any reasonable or immediate action to help combat the hostile work environment.

54. Around July 20, 2021, Plaintiff filed an EEOC Charge of Discrimination against Defendants Riverbay Corporation and Douglas Elliman due to the unlawful discrimination, harassment, and retaliation that he had been forced to endure.

55. Thereafter, in retaliation for opposing Defendants' unlawful employment practices and filing an EEOC Charge, Defendants stopped inviting Plaintiff to significant management meetings

that he regularly participated in prior to filing his EEOC Charge, including but not limited to, collective bargaining agreement negotiations, holdover meetings, commercial tenant discussions and Riverbay Board matters.

56. Additionally, in a further effort to retaliate against Plaintiff for opposing Defendants' unlawful employment practices and for filing an EEOC Charge, Defendants excluded Plaintiff from emails that he would have received before he filed an EEOC Charge, including but not limited to emails concerning grievance/arbitration hearings, contracts negotiations, and Riverbay Board elections.

57. Around August 2021, Defendant Riverbay Corporation's Executive General Manager Klehammer, eliminated the 2020-2021 annual evaluation which denied non-union employees, including Plaintiff, their annual raises.  Further, this was the first time in years that no annual raises were issued to non-union employee.

58. However, Defendant Riverbay Corporation's Executive General Manager Klehammer did issue annual raises by renegotiating new collective bargaining agreements for at least two (2) unions in 2021 and two (2) additional unions in 2022 which guaranteed continued annual raises for approximately seven hundred (700) union employees without issue.

59. Around August 2, 2021, Defendant Riverbay Corporation's Director of Safety Anthony Barzelatto ("Barzelatto") told Plaintiff in front of Defendant Riverbay Corporation's Litigation Coordinator Sharee Melton ("Melton") and Defendant Riverbay Corporation's Junior Property Manager Margaret Echevarria ("Echevarria"), that Plaintiff was getting an air purifier in his office because "YOU HAVE THE MOST INFECTION" while looking directly at Plaintiff.

60. Around April 14, 2022, Plaintiff received his 2021-2022 annual evaluation and was awaiting receipt of his earned annual increase which Defendant Riverbay Corporation never issued.

61. Around April 28, 2022, Defendant Riverbay Corporation's Compliance Administrator Steven Phillips ("Phillips") submitted his immediate resignation letter from the Legal Department because he felt that he was being treated differently because of his race.

62. Thereafter, Plaintiff requested that Defendants hire a replacement staff member for Defendant Riverbay Corporation's Compliance Administrator Phillips because Plaintiff had been forced to absorb his former colleagues job responsibilities without any additional compensation.

63. However, despite repeated requests for a replacement staff member, Defendants refused to hire anyone and knowingly forced Plaintiff to absorb his former colleagues' entire job duties and responsibilities without any additional compensation.

64. Around May 12, 2022, Plaintiff complained to Defendant Riverbay Corporation's Director of Legal Department Munns, that Defendants refusal to hire a temporary employee, despite past practice to immediately hire replacement staff, was clearly a "HIGHLY CALCULATED RETALIATORY BEHAVIOR BY OVER-BURDENING [PLAINTIFF] WITH OTHER EMPLOYEE'S WORK TO ISOLATE AND DROWN OUT AN EMPLOYEE WHO HAS RIGHTFULLY INVOKED HIS LEGALLY PROTECTED EMPLOYMENT LAW RIGHTS."

65. Nonetheless, despite Plaintiff's complaints of retaliation and repeated requests for a replacement staff member, Defendants refused to hire anyone and continued to force Plaintiff to absorb his former colleagues' entire job duties without any additional compensation.

66. Around May 13, 2022, Defendant Riverbay Corporation's Director of Procurement Jose Mendez ("Mendez"), walked into Plaintiff's office to warn him about what Defendant Riverbay's Corporation's Executive General Manager Klehammer was saying about "Plaintiff, and what Klehammer was going to do to him, which Plaintiff construed as a threat to his employment status.

67. Around June 10, 2022, in a further effort to retaliate against Plaintiff for opposing Defendants' unlawful employment practices and requesting the right to sue in federal court, Defendants terminated Plaintiff's employment after more than four (4) years with Defendants.

68. Ultimately, Defendants discriminated against and terminated Plaintiff on the basis of his race, color, and national origin, and because Plaintiff complained about the unlawful conduct of Defendants related to the above protected classes.

69. Defendants retaliated against Plaintiff for engaging in protected activity and opposing Defendants' unlawful practices.

70. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

71. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

72. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

73. As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that he is having difficulty eating and sleeping.

74. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to his professional reputation.

75. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary

losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

76. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

77. Plaintiff claims unlawful discharge and also seeks reinstatement.

78. Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

79. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

80. Title VII states in relevant part as follows:

(a) Employer practices: It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

81. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendants Riverbay Corporation and Douglas Elliman. Among other discriminatory comments and conduct, Defendants Riverbay Corporation and Douglas

Elliman discriminated against Plaintiff on the basis of his race, color, and national origin, and created a hostile work environment.

82. Plaintiff complains of Defendants Riverbay Corporation and Douglas Elliman's violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, or national origin.

83. Defendants Riverbay Corporation and Douglas Elliman engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

84. Defendants Riverbay Corporation and Douglas Elliman violated the above and Plaintiff suffered numerous damages as a result.


### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

85. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

86. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

87. Defendants Riverbay Corporation and Douglas Elliman engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to their unlawful employment practices.

88. Defendants Riverbay Corporation and Douglas Elliman violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION
### FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### (Not Against Individual Defendants)

89. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

76. Title VII of the Civil Rights Act of 1964, as amended, also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiffs' protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiffs' employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

77. Defendants' conduct occurred because of Plaintiff's protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

78. Further, the discriminatory conduct and comments directly refers to Plaintiff's race, color, and national origin and filled the environment of Plaintiff's work area.

79. Additionally, the discriminatory conduct and comments were emotionally damaging and caused Plaintiff to sustain severe emotional distress resulting in physical illness.

80. Plaintiff subjectively regarded the discriminatory and derogatory comments and conduct as unwelcome, unwanted, and objectively opposed said conduct.

81. As a result of these violations, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION AND RETALIATION UNDER 42 U.S.C § 1981
### (AGAINST ALL DEFENDANTS)

82. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

83. 42 U.S.C § 1981 - Equal rights under the law states provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

84. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving Korean American individuals of the equal rights described therein, in further violation of 42 U.S.C. §1981.

85. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

86. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

87. Defendants violated the above and Plaintiff suffered numerous damages as a result.

88. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of 42 U.S.C § 1981.

89. Plaintiff claims Defendants both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violated of 42 U.S.C § 1981.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

90. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

91. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to

hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

92. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race, color, and national origin, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on Plaintiff's membership in the aforementioned protected classes.

93. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

94. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

95. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

96. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

97. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

98. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

99. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

100.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs

of this Complaint.

101. New York State Executive Law §296(6) further provides that "It shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any

of the acts forbidden under this article, or to attempt to do so."

102. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling

and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

103. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New

York State Executive Law Section 296.

104. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

105.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs

of this Complaint.

106.    The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be

an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof,

because of the actual or perceived age, race, creed, color, national origin, gender, disability,

marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire

or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

107.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

108.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

109.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

110.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

111.    The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

112.    Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

113.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

114.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION FOR AIDING AND ABETTING
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

115.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs

of this Complaint.

116.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be

unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the

doing of any of the acts forbidden under this chapter, or attempt to do so."

117.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing

the above discriminatory, unlawful, and retaliatory conduct.

118.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of New York City Administrative Code Title 8.

119.    Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS AN ELEVENTH CAUSE OF ACTION
## FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

120.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs

of this Complaint with the same force and effect as if fully set forth herein.

121.    New York City Administrative Code Title 8-107(19) Interference with protected rights

states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce,

intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with,

any person in the exercise or enjoyment of, or on account of his or his having aided or

encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

122.    Defendants violated the section cited herein as set forth.

123.    Defendants violated the above and Plaintiff suffered numerous damages as a result.


**AS A TWELTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

124.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

125.    New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

a.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

i.    The employee or agent exercised managerial or supervisory responsibility; or

ii.    The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

126.    Defendants violated the above and Plaintiff suffered numerous damages as a result.


**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.


Date:   September 1, 2022
        New York, New York

                                        Respectfully Submitted,

                                        **DEREK SMITH LAW GROUP, PLLC.**

                                        Attorneys for Plaintiff


                                BY:   __/s/ Daniel Altaras_____
                                      Daniel Altaras, Esq.
                                      One Pennsylvania Plaza, Suite 4905
                                      New York, New York 10119
                                      (212) 587-0760