UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES LEE,

       Plaintiff,

    -v-                        No. 22-CV-7504-LTS

RIVERBAY CORPORATION,
RESIDENTIAL MANAGEMENT GROUP,
LLC d/b/a DOUGLAS ELLIMAN
PROPERTY MANAGEMENT, NOEL
ELLISON, WARREN MITCHELL,
INELLE COOPER, and ROBERT
KLEHAMMER,

       Defendants.

---

OPINION AND ORDER

APPEARANCES:

DEREK SMITH LAW GROUP, PLLC
By:    Daniel Judah Altaras
1 Penn Plaza, Suite 49th Floor
New York, NY 10011

*Attorneys for Plaintiff James Lee*

JACKSON LEWIS P.C.
By:    Brian Jeffrey Shenker
58 South Service Road, Suite 250
Melville, NY 11747

*Attorneys for Defendants Riverbay
Corporation, Residential Management Group
d/b/a Douglas Elliman Property
Management, Noel Ellison, Warren Mitchell,
Inelle Cooper, and Robert Klehammer*

LAURA TAYLOR SWAIN, Chief United States District Judge

Plaintiff James Lee ("Plaintiff") brings this action against Riverbay Corporation, Residential Management Group, LLC d/b/a Douglas Elliman Property Management, Noel Ellison, Warren Mitchell, Inelle Cooper, and Robert Klehammer (collectively, "Defendants"), asserting various employment discrimination claims under federal, New York State, and New York City law. Except as otherwise indicated in the discussion below, the Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

Before the Court is Defendants' motion to dismiss the Amended Complaint (docket entry no. 14 ("Amend. Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and Defendants' motion to strike two paragraphs of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). The Court has reviewed thoroughly the parties' submissions. For the following reasons, Defendants' motion to strike is denied, and the motion to dismiss is granted in part and denied in part. Plaintiff is, however, granted leave to move to replead the dismissed claims in a manner consistent with the instructions set forth in this Opinion and Order.

BACKGROUND

The following factual summary is taken from the Amended Complaint, the well-pleaded allegations of which are presumed true for the purposes of this dismissal motion practice.

Plaintiff is a Korean American resident of Dutchess County, New York, who was employed as the Associate General Counsel of Riverbay Corporation ("Riverbay") and Residential Management Group, LLC, doing business as Douglas Elliman Property Management ("Douglas Elliman") (together, the "Corporate Defendants"), from around February 26, 2018,

through around June 10, 2022. (Amend. Compl. ¶¶ 8, 12, 18, 69.) Riverbay is a New York-based corporation with its principal place of business in New York State. (Id. ¶ 9.) Douglas Elliman is a foreign limited liability company that does business in New York State. (Id. ¶ 10.) At all times material to this action, "Riverbay [] and Douglas Elliman were either joint employers or a single integrated employer of Plaintiff." (Id. ¶ 11.)

At all material times, Defendant Noel Ellison ("Ellison") was the General Manager at Riverbay; Defendant Warren Mitchell ("Mitchell") was the Assistant General Manager at Riverbay; Defendant Inelle Cooper ("Cooper") was the Director of Human Resources at Riverbay; and Defendant Robert Klehammer ("Klehammer") was the Vice President/Managing Director at Douglas Elliman, and was the Executive General Manager at Riverbay. (Id. ¶¶ 13-16.) Plaintiff alleges that these four individuals (collectively, the "Individual Defendants") all held supervisory authority over Plaintiff, "controlling many of Plaintiff's job duties," and "held the power to hire and fire Plaintiff." (Id.)

Plaintiff alleges that, shortly after he was hired, he became the target of inappropriate race-related comments from Defendant Mitchell, which continued throughout the remainder of his employment, such as Mitchell calling Plaintiff "Bruce Lee" whenever the two would encounter each other (id. ¶¶ 19, 27), occasionally in front of other colleagues (id. ¶ 32), and repeatedly asking Plaintiff why he did not own a dry-cleaning business "like other Korean people," who Mitchell "claimed were Plaintiff's 'peeps'" (id. ¶¶ 22-24, 28). On one occasion, around February 14, 2020, Mitchell interrupted a meeting between Plaintiff, Klehammer, and another non-party supervisor, "look[ed] at Plaintiff and state[d], 'Look at Bruce Lee over here, look at what he looks like when he smiles, look at his face,'" before "laughing hysterically" and exiting the room. (Id. ¶ 32.) Around early July 2020, Plaintiff reported these inappropriate

comments to Cooper, but Defendants "failed to take any reasonable or immediate action" to combat the conduct.  (Id. ¶¶ 39-41.)

On June 9, 2021, before the commencement of a meeting with the Riverbay Board of Directors, and while Klehammer, Ellison, and Mitchell were present, Mitchell looked at Plaintiff and said, "Look how dark he is, he really looks South Korean now," after which "the entire room . . . broke out in laughter."  (Id. ¶ 47.)  Mitchell repeated the comment at the conclusion of the meeting, leading to more laughter, after which Klehammer is alleged to have said, "I hope we didn't give [Plaintiff] something to report to HR."  (Id. ¶¶ 48-49.)  Ellison allegedly responded by holding "out his left hand to gesture a paper and his right to gesture a pen," and saying, "[t]he last comment was $1.1 million and now this comment is $1.2 million." (Id. ¶ 50.)  The three again laughed.  (Id. ¶ 51.)

Around the onset of the COVID-19 pandemic, in March of 2020, Plaintiff's coworkers began to make comments that "inappropriately associate[d] Plaintiff with Covid-19 . . . due to his Asian heritage."  (Id. ¶¶ 36-37.)  By way of example, Plaintiff proffers that a non-party colleague "joked" that "everyone need[ed] to stand six (6) feet away from [her], especially him" while pointing at Plaintiff, prompting laughter from another non-party colleague.  (Id. ¶ 36.)  Around the same time, in March of 2020, Plaintiff was "specifically excluded and deliberately not invited" to attend ongoing planning meetings with department heads and supervisors, which were held to coordinate pandemic staffing.  (Id. ¶¶ 34-35.)  Plaintiff asserts that he should have been present at these meetings, because he was the only supervising attorney in Riverbay's Legal Department who was in the office at the time.  (Id. ¶ 35.)  Plaintiff reported the inappropriate COVID-19-related comments by the non-party colleague to the Director of

Riverbay's Legal Department, Michael Munns ("Munns"),[1] in April of 2020, but Defendants "failed to take any reasonable or immediate action" to combat the conduct.  (Id. ¶¶ 37-38.) Another colleague made a COVID-19-related "joke" to Plaintiff on at least one other occasion in August of 2022.  (Id. ¶ 61.)

From around May 2021 to July 2021, Plaintiff reported discriminatory comments and actions he experienced to the Chairman of the Appeals Committee, who was also a Board Member, but Riverbay's Board of Directors also "failed to take any reasonable or immediate action."  (Id. ¶¶ 52-53.)  Plaintiff also complained to Ellison about the June 9, 2021, incident around June 30, 2021, but "no formal investigation and/or disciplinary action(s) followed."  (Id. ¶ 54.)  Around July 20, 2021, Plaintiff filed an EEOC Charge of Discrimination against the Corporate Defendants.  (Id. ¶ 56.)  Plaintiff alleges that, following the filing of the EEOC Charge, Defendants stopped inviting Plaintiff to "significant management meetings" and began excluding him from emails.  (Id. ¶¶ 57-58.)

Plaintiff alleges that he experienced further retaliation following his filing of an EEOC Charge.  Around May 12, 2022, Plaintiff complained to Munns, the Director of Riverbay's Legal Department, that he was being forced to absorb job responsibilities of a colleague who had resigned around April 28, 2022.  (Id. ¶¶ 63-66.)  Plaintiff alleges that Riverbay's past practice was to immediately hire replacement staff, but that Defendants refused to hire a temporary employee in this instance, thereby engaging in "a 'highly calculated retaliatory behavior by over-burdening [Plaintiff] with other employee's work to isolate and drown [him] out[.]'"  (Id. ¶ 66.)

Over the course of his employment, Plaintiff also alleges, he was denied a suitable

---

[1]      Munns is not a named defendant in this action.  (Amend. Compl. at 1.)

salary increase or raise on at least four occasions: in November 2020 (id. ¶ 44); around

December 21, 2020 (id. ¶ 45); around August of 2021 (id. ¶ 59); and around April 14, 2022 (id. ¶

62).  As to the November 2020 incident, Plaintiff alleges that he "received a minor salary

increase similar to non-Korean colleagues that scored significantly lower than Plaintiff on their

annual performance evaluations," and that "non-Korean colleagues" with similar or lower

evaluation scores "received much greater salary increases than Plaintiff."  (Id. ¶ 44.)

Finally, around June 10, 2022, "a few days after receiving the right to sue both

corporate Defendants from the EEOC . . . Defendants terminated Plaintiff's employment[.]"  (Id.

¶ 69.)

Based principally upon the above allegations, Plaintiff commenced this action on

September 1, 2022.  (Docket entry no. 1.)  Following the first motion to dismiss filed by

Defendants on November 7, 2022 (docket entry no. 12), Plaintiff filed the Amended Complaint

as of right.  Plaintiff asserts the following twelve causes of action for unlawful employment

discrimination on the basis of race, color, and national origin: as against the Corporate

Defendants, (1) discrimination, (2) retaliation, and (3) hostile work environment under Title VII

of the Civil Rights Act of 1964 ("Title VII"); and, as against all Defendants, (4) discrimination

and retaliation in violation of 42 U.S.C. section 1981 ("Section 1981"), (5) discrimination and

hostile work environment in violation of Section 296(1) of the New York State Human Rights

Law ("NYSHRL"), (6) retaliation in violation of Section 296(7) of the NYSHRL, (7) aiding and

abetting discrimination in violation of Section 296(6) of the NYSHRL, (8) discrimination and

hostile work environment in violation Section 8-107(1) of the New York City Human Rights

Law ("NYCHRL"), (9) retaliation in violation of Section 8-107(7) of the NYCHRL, (10) aiding

and abetting discrimination in violation of Section 8-107(6) of the NYCHRL, (11) interference

with protected rights under Section 8-107(19) of the NYCHRL, and (12) supervisory liability under Section 8-107(13) of the NYCHRL.  (Amend. Compl. ¶¶ 81-142.)  Defendants move to dismiss the entire Amended Complaint.  (Docket entry no. 18 (the "Motion").)  Defendants also move to strike paragraphs 42 and 43 of the Amended Complaint, arguing that the information therein is privileged and is not relevant to Plaintiff's asserted claims.  (Id.)

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. (citation omitted), but a complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff."  Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017).

The Court first addresses the claims against the Corporate Defendants, before turning to the claims against the Individual Defendants.  The claims for interference with protected rights and supervisory liability under the NYCHRL and the motion to strike are addressed separately in the final section of this Opinion and Order.

Corporate Liability

        Plaintiff asserts all twelve causes of action against the Corporate Defendants.  The federal, state, and local law claims for disparate treatment, retaliation, and hostile work environment, and the claims for aiding and abetting under the NYSHRL and NYCHRL are addressed in turn.

Discrimination Claims

        Plaintiff brings claims for disparate treatment discrimination under Title VII, Section 1981, the NYSHRL, and the NYCHRL, based upon:

> Defendants' decision to: [(1)] exclude Plaintiff from meetings he ordinarily should have been invited to attend, [(2)] refuse to provide a salary increase as compared to non-Korean employees despite a uniform salary increase policy for non-union employees, [(3)] exclude Plaintiff from emails that he would have received before he filed an EEOC Charge, [(4)] deny an earned annual salary increase . . . [(5)] refuse to hire replacement staff and force Plaintiff to absorb his former colleagues' entire job duties without any additional compensation . . . [and (6) terminate Plaintiff's employment].

(Docket entry no. 21 ("Pl. Mem.") at 3 (citing Amend. Compl. ¶¶ 34-35, 44-45, 57-58, 62, 64-67).)

        "Prior to August 19, 2019, the pleading standards were generally the same for Title VII, section 1981, and NYSHRL claims."  Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021) (citations omitted), rev'd on other grounds, 2024 WL 2813563 (2d Cir. June 3, 2024).  However, on August 19, 2019, the New York legislature amended the NYSHRL, bringing the standard for claims under the NYSHRL closer to that of the NYCHRL for claims

that accrued on or after the amendments' effective date of October 11, 2019. [2]  Id. (citing

Wellner v. Montefiore Med. Ctr., No. 17-CV-3479-KPF, 2019 WL 4081898, at *5 n.4 (S.D.N.Y.

Aug. 29, 2019)); see also Cannizzaro v. City of New York, 82 Misc. 3d 563, 576 (N.Y. Sup. Ct.

N.Y. Cnty. 2023) (agreeing with the Wellner Court's discussion of the amended NYSHRL

standard).  "[A] cause of action for discrimination under the NYSHRL accrues and the limitation

period begins to run on the date of the alleged discriminatory act."  Fair Hous. Just. Ctr., Inc. v.

JDS Dev. LLC, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020) (internal quotation marks and citation

omitted).

   Because this case involves conduct alleged to have occurred before and after the

effective date of the NYSHRL Amendments, two different standards must be used to analyze

Plaintiff's claims, including his disparate treatment discrimination claims.  For acts that occurred

prior to October 11, 2019, the applicable standard for the federal and state law claims comes

from the three-step burden-shifting framework established by the Supreme Court in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973).  At the initial pleading stage, a plaintiff must

"make[] a showing (1) that [plaintiff] is a member of a protected class, (2) that [plaintiff] was

qualified for the position . . . sought, (3) that [plaintiff] suffered an adverse employment action,

and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory

motivation."  Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in

---

[2]  There is disagreement among courts in this District as to the effective date of the amended NYSHRL: either August 12, 2019 (the date the legislation was signed), or October 11, 2019, (the date other parts of the omnibus bill containing the amendment took effect).  See Spencer v. Global Innovative Grp., LLC, No. 17-CV-7604-PGG-BCM, 2023 WL 6633860, at *8 n.8 (S.D.N.Y. Oct. 12, 2023) (comparing case law on the issue). The Supreme Court for the State of New York for New York County and for Kings County recently ruled in favor of the October 11, 2019, effective date.  See, e.g., Ruiz v. Armstrong, 207 N.Y.S.3d 374, 390 n.3 (N.Y. Sup. Ct. Kings Cnty. 2024); Cannizzaro, 82 Misc. 3d at 576.  This Opinion and Order uses the later date.

original); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86-87 (2d Cir. 2015) ("[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal' -- he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" (citation omitted)).

To state a claim for discrimination under the NYCHRL, and for causes of action that accrue after October 11, 2019, under the NYSHRL, a plaintiff must allege only that the plaintiff was "treated 'less well' . . . because of a discriminatory intent," i.e., that the unequal treatment was based, at least in part, on a protected characteristic. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)," id. at 114 (citation omitted), and the discriminatory motive need only be "one of the motivating factors" for the unlawful discrimination, rather than the "sole motivating factor." Watson v. Emblem Health Servs., 158 A.D.3d 179, 182-83 (N.Y. App. Div. 1st Dep't 2018) (citation omitted). In applying this lenient standard, the Court must consider the totality of the circumstances. Bacchus v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 214, 245 (E.D.N.Y. 2015).

Federal and Pre-October 2019 NYSHRL Discrimination Claims

The parties dispute whether the Amended Complaint satisfies the third and fourth elements of the McDonnell Douglas standard, i.e., whether the alleged actions constitute "adverse employment actions," and whether Plaintiff has set forth sufficient facts to support an inference of discriminatory motive as to those adverse actions. (Docket entry no. 19 ("Defs. Mem.") at 9-12.) While the Second Circuit has cautioned that "there are no bright line rules" in determining whether challenged conduct rises to the level of an "adverse employment action," courts have generally defined the term to mean a "materially adverse change in the terms and

conditions of employment." <u>Richardson v. New York State Dep't of Correctional Serv.</u>, 180 F.3d 426, 446 (2d Cir. 1999) (citation omitted). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" <u>Galabaya v. N.Y.C. Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). Such change, however, must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" <u>Id.</u> (citation omitted).

As to the fourth element, a recognized method of raising an inference of discrimination is "a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group." <u>Mandell v. Cnty. of Suffolk</u>, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citation omitted). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 493-94 (2d Cir. 2010) (internal quotation marks and citation omitted). The facts and circumstances of the comparator and the plaintiff need not be identical, but must bear a "reasonably close resemblance." <u>Id.</u> at 494 (citation omitted).

To start, several of the alleged acts, as pleaded, are insufficient to provide the requisite minimal support for <u>both</u> the third and fourth elements of the <u>McDonnell Douglas</u> standard. Plaintiff appears to allege that Defendant Klehammer excluded Plaintiff from planning meetings in March of 2020 ahead of the COVID-19 pandemic (Amend. Compl. ¶¶ 34-35), and that Plaintiff was again excluded from management meetings and emails by "Defendants" following his filing of an EEOC Charge in July of 2021. (<u>Id.</u> ¶¶ 57-58.) As to the March 2020

meetings, Plaintiff does not detail the duration of the exclusion nor allege that these actions materially affected the terms and conditions of his employment, e.g., by preventing him from effectively meeting his job responsibilities, such that the exclusion rose above the level of a mere inconvenience.  Cf., e.g., Sanders v. N.Y.C. Human Res. Admin, 361 F.3d 749, 756 (2d Cir. 2004) (noting "plaintiff's alleged exclusion from critical meetings over a three or four month period" "might well" constitute materially adverse conduct); Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) (". . . Plaintiff must have experienced 'some attendant negative result [such as] a deprivation of a position or opportunity'" in order to allege an adverse employment action).  Moreover, Plaintiff only implies, but does not state, that such exclusion was motivated by discrimination, and there are no allegations in the Amended Complaint that Klehammer inappropriately associated Plaintiff with COVID-19 due to his race or was aware that other employees had done so.  (Amend. Compl. ¶¶ 34-35.)  As to the post-July 2021 meetings, Plaintiff similarly does not detail the duration or the effect of his exclusion.  (Amend. Compl. ¶¶ 57-58.)  Plaintiff also alleges that the subsequent exclusion occurred because he filed an EEOC Charge, rather than because of his race, color, or national origin, and therefore this latter allegation is more appropriately analyzed under his retaliation theory of discrimination, which is explored in the following section.

A number of the remaining allegations, although describing incidents that might constitute "adverse employment actions," either fail to plead sufficient "minimal" support for an inference of discrimination or are conclusory.  Plaintiff alleges that he was denied multiple merited salary increases: in November 2020, when he alleges that he "received a minor salary increase similar to non-Korean colleagues that scored significantly lower . . . on their annual performance evaluations," and that "non-Korean colleagues" with similar or lower evaluation

scores "received much greater salary increases than Plaintiff" (Amend. Compl. ¶ 44); around December 21, 2020, when he did not receive a raise following the transfer of a staff member into the Legal Department, despite the apparent supervisor of the transferor division receiving a raise (id. ¶ 45);[3] around August 2021, following the elimination of the "2020-2021 annual evaluation" by Defendant Klehammer, "which denied non-union employees, including Plaintiff, their annual raises" (id. ¶ 59); and "[a]round April 14, 2022," when Plaintiff "received his 2021-2022 annual evaluation and was awaiting receipt of his earned annual increase which Defendant Riverbay Corporation never issued" (id. ¶ 62).

Plaintiff does not allege that the denial based upon his non-union status and the April 14, 2022, denial were due to his membership in a protected racial class, and his comparison to all "non-Korean colleagues" and a non-attorney in a department different from Plaintiff's do not bear the "reasonably close resemblance" necessary to raise an inference of discrimination, even at the pleading stage.  See, e.g., Sosa v. N.Y.C. Dep't of Educ., 368 F. Supp. 3d 489, 514 (E.D.N.Y. Jan. 22, 2019), R. & R. adopted, 368 F. Supp. 3d 489 (E.D.N.Y. Mar. 25, 2019) ("[A]t the pleading stage, it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated."); Potash v. Fla. Union Free Sch. Dist., 972 F. Supp. 2d 557, 580 (S.D.N.Y. 2013) ("Employment characteristics which can support a finding that two employees are similarly situated include similarities in education, seniority, performance, and specific work duties . . .

---

[3]     The apparent implication of this allegation is that Plaintiff's supervisory duties increased, whereas the transferor supervisor's duties decreased as a result of this transfer, but Plaintiff nevertheless received no increase in pay.  (See Amend. Compl. ¶¶ 18, 45 ("[I]n light of a 200% increase in holdover cases managed by Plaintiff, Defendants agreed to add another staff member to the Legal Department . . . .")

and similar requirements for skill, effort and responsibility for jobs performed under similar working conditions." (internal citations and quotations omitted)).

Plaintiff's allegation that he was "forced to absorb" the duties and responsibilities of a former colleague also fails to plausibly raise an inference of discrimination. Plaintiff specifically alleges that the motivation for the excessive workload was retaliation, rather than discrimination. (See Amend. Compl. ¶ 66-67 (alleging Plaintiff complained to Munns that "Defendants' refusal to hire a temporary employee" was a "highly calculated retaliatory behavior").) Even under a generous reading of the Amended Complaint to allege that this conduct was driven by a discriminatory motive, the allegation of excessive workload remains factually insufficient to satisfy the fourth prong. Plaintiff states, in a conclusory fashion, that it was "past practice to immediately hire replacement staff." (Id. ¶ 66.) Plaintiff provides no facts as to the typical length of time between past resignations and the hiring of replacement staff for comparable positions, Munns' response to Plaintiff's complaint, or which of the Individual Defendants, if any, had the authority to engage a temporary hire. Absent such facts regarding the circumstances of the alleged "refusal to hire," which lasted for at most two months given the date of his colleague's resignation and Plaintiff's own termination (id. ¶¶ 63, 69), Plaintiff's conclusory allegation cannot raise a plausible inference of discriminatory intent. See Ochei v. The Mary Manning Walsh Nursing Home Co., No. 10-CV-2548-CM-RLE, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) (noting allegations structured as "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)" is a "common (and patently defective) pleading technique").

The allegation that Plaintiff was terminated as a result of unlawful discrimination

is similarly devoid of factual detail.  Plaintiff need not plead "the key decision-makers behind the decision to . . . terminate Plaintiff" (Pl. Mem. at 7) in order to state a claim for discrimination, but the conclusory allegation that his termination was due to discrimination is too fact-bare even for the generous standard applied at this stage.  As Defendants point out, Plaintiff has provided only the date of his termination—he has not, for example, provided facts as to any cited reason for his termination, whether Plaintiff's termination was communicated to him by one of the Individual Defendants and, if not, how Plaintiff learned of his termination.  (See Amend. Compl. ¶ 69 ("Around June 10, 2022 . . . Defendants terminated Plaintiff's employment after more than four (4) years.").)  Without minimal factual detail providing a basis for an inference of discriminatory termination, Plaintiff's allegations fail to cross the line from "conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The parties dispute whether the alleged discriminatory comments themselves are, standing alone, sufficient to plausibly support an inference of discrimination as to Plaintiff's termination.  Plaintiff contends that the alleged discriminatory comments attributed to the Individual Defendants cannot be considered mere "stray remarks," and that, in any case, the comments are part of a pattern of "escalating negative conduct," such that the allegations are sufficient to support an inference of discriminatory motivation for his termination.  (Pl. Mem. at 6-7.)  However, there is no indication of who terminated Plaintiff or the purported reason for the termination, if any was given, such that the discriminatory comments cannot, on the basis of the Amended Complaint, be associated with a particular supervisor's decision to terminate Plaintiff. See, e.g., Makhsudova v. City of New York, No. 20-CV-10728-KPF, 2022 WL 1571152, at *7 (S.D.N.Y. May 18, 2022) (finding no plausible inference of discrimination where plaintiff alleged no facts suggesting relevant defendant "had any involvement in the decision to terminate

her employment – or, more broadly, any temporal or causal proximity between [the] offensive remarks and [p]laintiff's termination").  Moreover, the date of the last alleged discriminatory comment, "most of [which] subsided after Plaintiff was forced to file his EEOC Charge" (Pl. Mem. at 6-7), is not clear from the Amended Complaint, and the Amended Complaint fails to otherwise set forth an actionable instance of discrimination as pleaded, such that Defendants' alleged conduct could be considered "escalating."  Accordingly, the Court cannot find, based on the Amended Complaint, that the alleged comments could give rise to an inference of discriminatory motive as to Plaintiff's termination.

The Motion is therefore granted to the extent it seeks dismissal of the claims asserted against the Corporate Defendants in Counts 1, 4, and 5 for disparate treatment discrimination under Section 1981 and Title VII, and under the NYSHRL to the extent the allegations are premised on conduct that occurred prior to October 11, 2019.

### NYCHRL and Post-October 2019 NYSHRL Discrimination Claims

Plaintiff's claims that arise from insulting comments based on Plaintiff's race, color or national origin do, however, meet the less demanding pleading standard set forth in the NYCHRL, which is also applicable to NYSHRL claims based on such conduct occurring after October 2019.  As in the case of Makhsudova v. City of New York, the Court finds that the alleged "incessant insults" by Mitchell and other colleagues directed toward Plaintiff personally and based upon Plaintiff's race, color, and national origin "transcend petty slights or trivial inconveniences," such that the conduct is actionable under both statutes.  No. 20-CV-10728-KPF, 2022 WL 1571152, at *10 (S.D.N.Y. May 18, 2022).  Plaintiff alleges that Mitchell referred to Plaintiff as "Bruce Lee" rather than by his actual name throughout the course of his employment, continually questioned Plaintiff as to why he "did not own a dry-cleaning business

like other Korean people," whom Mitchell referred to as Plaintiff's "peeps," interrupted a meeting on at least one occasion to ridicule Plaintiff, and made racially-charged remarks before the start of a Board meeting, in front of Plaintiff's supervisors.  (Amend. Compl. ¶¶ 22-24, 27-28, 32-33, 47-51.)  Plaintiff also alleges that he was subjected to a host of COVID-19 related "jokes," based upon an inappropriate association of Plaintiff with COVID-19 due to his Asian heritage.  (Id. ¶¶ 36-37, 61.)  These allegations are sufficient at this stage to state a claim under the NYCHRL with respect to all such comments, and under the NYSHRL for conduct that occurred after October 11, 2019.  Accordingly, those elements of Counts 5 and 8 survive the dismissal motion practice to this limited extent.

The remaining allegations suffer from the same defects set out in detail above in connection with the pre-October 2019 NYSHRL claims, in that they are either too conclusory as pleaded to state a claim for disparate treatment, or they do not sufficiently connect the alleged disparate treatment to Plaintiff's membership in a protected class, even under the minimal NYCHRL pleading standard.  See, e.g., Lugo v. City of New York, 518 F. App'x 28, 30 (2d Cir. 2013) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal or state discrimination claims . . . it still requires a showing of some evidence from which discrimination can be inferred." (internal quotation marks and citation omitted)); Desrosiers v. Summit Sec. Servs., No. 21-CV-10941-JPO, 2022 WL 13808524, at *22-23 (S.D.N.Y. Oct. 21, 2022) (citation omitted) (holding that the "deficiencies in [Plaintiff's] allegations—the failure to identify with any specificity that comparator employees were similarly situated, the absence of allegations that any potentially discriminatory comments were uttered by a decisionmaker or had any connection to [Plaintiff's] termination"—were fatal to federal and NYCHRL discrimination claims).

Plaintiff's claims under the NYCHRL and under the NYSHRL for conduct that occurred after October 11, 2019, as asserted in Counts 5 and 8, therefore survive to the extent they are based upon the discriminatory comments directed toward Plaintiff. The claims are otherwise dismissed.

Retaliation Claims

In Counts 2, 4, 6, and 9, Plaintiff also asserts retaliation claims against the Corporate Defendants under Title VII, Section 1981, the NYSHRL, and the NYCHRL, based on the same conduct alleged to give rise to his discrimination claims. See discussion supra p. 8. Title VII, the NYSHRL, and the NYCHRL all provide that it is unlawful for an employer to retaliate against an employee because the employee has opposed an unlawful discriminatory practice or cooperated in an investigation of discrimination. See 42 U.S.C. § 2000e-3(a); N.Y. EXEC. LAW § 296(7); N.Y.C. Admin. Code § 8-107(7). Section 1981 has also been interpreted to encompass claims of retaliation. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008).

Federal and Pre-October 2019 NYSHRL Retaliation Claims

Retaliation claims brought under Title VII, Section 1981, and the pre-October 2019 provisions of the NYSHRL are subject to the same standard. Littlejohn v. City of New York, 795 F.3d 297, 315-16 (2d Cir. 2015) (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)). At the motion to dismiss stage, a plaintiff must plausibly allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Littlejohn, 795 F.3d at 315-16 (citation omitted). The parties principally

dispute whether the third and fourth elements have been met by the allegations in the Amended Complaint.

An "adverse employment action" has been defined for purposes of a retaliation claim as "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).  Ordinarily, "petty slights, minor annoyances, and a simple lack of good manners will not create such deterrence," Burlington, 548 U.S. at 68 (citation omitted), but the Second Circuit has recognized that this definition of "adverse employment action" "covers a broader range of conduct than does the adverse-action standard" for disparate treatment discrimination claims.  Vega, 801 F.3d at 90.

As to the causation prong, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action," which does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  Id. at 90-91 (citations omitted).  A causal connection to retaliation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  Littlejohn, 795 F.3d at 319 (internal quotation marks and citation omitted).  There is no "bright line . . . beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," id. (citation omitted), but the Second Circuit has previously found that five months is "not too long to find the causal relationship."  Vega, 801 F.3d at 90 (citation omitted).  "Where

there are longer gaps in time between protected activity and adverse employment action, the inference of causation may[, under certain factual circumstances,] be inferred from the fact that the employer was waiting for the opportune time to retaliate." White v. City of Middletown, 45 F. Supp. 3d 195, 219 (D. Conn. 2014) (citations omitted).

Plaintiff has alleged that he engaged in the following protected activities: complaining to Munns, the Director of the Legal Department, in April 2020 about inappropriate COVID-19 "jokes" directed at Plaintiff (Amend. Compl. ¶¶ 37-38); complaining to Cooper in July 2020 regarding inappropriate racist comments by upper management (id. ¶¶ 39-40); complaining to the Chairman of the Appeals Committee, who was also a Board Member, from around May 2021 through July 2021 about discriminatory comments and actions that Plaintiff experienced (id. ¶¶ 52-53); complaining to Ellison around June 30, 2021, about the inappropriate comments made before the start of the June 9, 2021, Board meeting (id. ¶¶ 54-55); filing an EEOC Charge of Discrimination against the Corporate Defendants around July 20, 2021 (id. ¶ 56); and complaining to Munns around May 12, 2022, about the company's alleged retaliatory failure to hire a temporary employee following a colleague's voluntary departure (id. ¶ 66). (See Pl. Mem. at 9.); see also Patel v. City of New York, 699 F. App'x 67, 69 (2d Cir. 2017) ("'Protected activity' is an assertion of rights covered by the provision of law under which the plaintiff is suing." (citations omitted)).

As an initial matter, the Court finds that these allegations are sufficient to allege plausibly that the Corporate Defendants knew of Plaintiff's complaints. See, e.g., Summa v. Hofstra Univ., 708 F.3d 115, 125-26 (explaining that, for a retaliation claim subject to the McDonnell Douglas framework, "[n]othing more is necessary than general corporate knowledge that plaintiff has engaged in a protected activity" (citation and internal quotation marks

omitted)); <u>Armstrong v. Metro. Transp. Auth.</u>, No. 07-CV-3561-DAB, 2014 WL 4276336, at

*20 (S.D.N.Y. Aug. 28, 2014) ("Courts have found general corporate knowledge to arise when a

supervisor, corporate officer, or employee whose job is to investigate and resolve discrimination

complaints becomes aware of the protected activity." (gathering cases)).  The Corporate

Defendants also would have been on notice regarding Plaintiff's filed EEOC charge.  <u>See</u> 42

U.S.C.A. § 2000e-5(b) (Westlaw through P.L. 118-82) ("Whenever a charge is filed by or on

behalf of a person claiming to be aggrieved . . . alleging that an employer . . . has engaged in an

unlawful employment practice, the Commission shall serve a notice of the charge (including the

date, place and circumstances of the alleged unlawful employment practice) on such employer . .

.  within ten days, and shall make an investigation thereof."); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Cosgrove v. Sears,

Roebuck & Co.</u>, 9 F.3d 1033, 1039 (2d Cir. 1993) (holding that the plaintiff had established a

prima facie case where the defendant-employer was aware of plaintiff's EEOC complaint).

       Turning to the alleged retaliatory acts, Plaintiff's allegations regarding exclusion

from planning meetings related to the COVID-19 pandemic cannot support a claim for

retaliation, because Plaintiff does not allege that he engaged in a protected activity prior to the

alleged exclusion in March of 2020.  Plaintiff's first complaint was allegedly made to Munns in

April of 2020, concerning a non-party colleague's alleged inappropriate association of Plaintiff

"with Covid-19 in front of co-workers due to his Asian heritage."  (Amend. Compl. ¶ 37.)

<u>Forrest v. N.Y.C. Hous. Auth.</u>, No. 22-CV-06480-JLR, 2023 WL 3203646, at *8 (S.D.N.Y. May

2, 2023) ("A plaintiff may not base her claim of retaliation upon complained-of-acts that

predated her speaking out . . . because such a claim lacks a causal nexus between the retaliation

and protected activity." (internal quotation marks and citations omitted)).  Plaintiff does not

detail the length of his alleged exclusion from planning meetings, nor does he allege that he was excluded at any time after he made his April 2020 complaint.

Two of Plaintiff's allegations regarding denials of pay raises are likewise insufficiently pleaded, for substantially the reasons explained above in connection with Plaintiff's disparate treatment claims regarding the same conduct. Plaintiff has not plausibly alleged that the denial of annual raises for <u>all</u> non-union employees in August 2021 was due to Plaintiff's complaints of discrimination (<u>see</u> Amend. Compl. ¶ 59), and the allegation of retaliatory failure by the Corporate Defendants to issue Plaintiff's annual increase around April 14, 2022, is conclusory and lacks sufficient factual detail to support a causal connection between his complaints—the last of which was made nearly a year earlier in July of 2021 (<u>id.</u> ¶ 56)—and the denial itself. (Amend. Compl. ¶ 62 (alleging simply that, "[a]round April 14, 2022, Plaintiff received his 2021-2022 annual evaluation and was awaiting receipt of his earned annual increase which Defendant Riverbay Corporation never issued.").) Plaintiff does not specify, for example, whether other employees had by that time received their earned annual increases, who failed to issue the annual increase, or whether and why he believes the denial of his raise was motivated by retaliation for engaging in a protected activity. (<u>See</u> <u>id.</u>)

Plaintiff also alleges that he was excluded from significant meetings and from emails that he had typically received prior the EEOC charge, "in retaliation for opposing Defendants' unlawful employment practices and filing an EEOC Charge." (Amend. Compl. ¶ 57). Although close temporal proximity can support an inference of a causal connection, <u>Littlejohn</u>, 795 F.3d at 319, these exclusion allegations are insufficient to indicate that Plaintiff suffered an adverse employment action, even under the broader definition of such actions that governs retaliation claims. Plaintiff does not, for instance, allege the duration and extent of the

exclusions, nor whether they impeded his ability to perform the responsibilities of his job.  See, e.g., McCullough v. Xerox Corp., 942 F. Supp. 2d 380, 387-88 (W.D.N.Y. 2013) ("[B]eing left out of meetings does not amount to an adverse action [for purposes of a claim for retaliation], absent a showing that some additional negative consequences flowed from that exclusion." (gathering cases)); Marby v. Neighborhood Defender Serv., 769 F. Supp. 2d 381, 398 (S.D.N.Y. 2011) (being kept "out of the organization's 'information loop' . . . [is] insufficient, by itself, to constitute retaliation" (gathering cases)).  While courts have found exclusion from meetings to be actionable when it is part of a larger pattern of retaliation, especially when such a pattern culminates in a significant adverse action, such as termination or denial of tenure, see, e.g., Dodd v. City Univ. of New York, No. 17-CV-9932-PAE, 2018 WL 4284289, at *7 (S.D.N.Y. Sept. 7, 2019); Aslin v. Univ. of Rochester, No. 6:17-CV-06847, 2019 WL 4112130, at *5 (W.D.N.Y. Aug. 28, 2019), it is not clear from the Amended Complaint how long the alleged exclusion occurred, such that it could plausibly be connected as part of a "larger pattern" to the sufficiently pleaded allegations of retaliation, which are discussed in more detail below.

Plaintiff's two remaining allegations regarding denial of appropriate pay raises do, however, set forth sufficient facts to support a claim of retaliation at the motion to dismiss stage: his allegation that his November 2020 salary increase was unduly "minor," and the December 2020 denial of what appears to have been a discretionary raise, which incidents occurred approximately four and five months, respectively, after Plaintiff's most recent complaint about inappropriate comments from coworkers.  (Amend. Compl. ¶¶ 39, 44-45.)  "The denial of a raise or bonus that an individual is entitled to or expects to receive as a matter of course constitutes 'a materially adverse change in the terms and conditions of employment and constitutes an adverse employment action.'"  Herling v. N.Y.C. Dep't of Educ., No. 13-CV-

5287, 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) (citation omitted).  The four-month

gap between the complaints and the allegedly inequitable raise in November 2020 is within the

range of temporal proximity that courts have found sufficient to support a claim for retaliation.

See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court

has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits

beyond which a temporal relationship is too attenuated to establish causation, we have previously

held that five months is not too long to find the causal relationship." (citation omitted)).

   The Second Circuit has also held that denial of a discretionary pay raise, even in

the stricter disparate treatment context, could constitute an adverse employment action where a

plaintiff can sufficiently establish a discriminatory motive.  See Davis v. N.Y.C. Dep't of Educ.,

804 F.3d 231, 236 (2d Cir. 2015) ("The fact that the employer had the right to allocate a bonus

on any ground that does not violate the law does not mean that the employer had the right to

allocate it on a ground that did violate the law.").  The Individual Defendant allegedly

responsible for the denial of the discretionary raise was Mitchell, who Plaintiff alleges had

engaged in a barrage of discriminatory comments and name-calling over the preceding months,

and whose conduct Plaintiff had reported about five months earlier.  (Amend. Compl. ¶¶ 22-24,

27-28, 32, 39, 45.)  At this pleading stage, these allegations are sufficient to state a retaliation

claim.  See Gorzynski 596 F.3d at 110; see also McKenzie v. Nicolson, No. 08-CV-0773-JFB-

AKT, 2009 WL 179253, at *5 n.5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit has

determined that an adverse action could be retaliatory in nature despite a significant time lapse if

the employer took action at the first opportunity to do so." (gathering cases)).

   Plaintiff has also proffered sufficient facts to support plausibly his remaining

claims of retaliatorily actions.  Courts in this Circuit have found that the assignment of an

excessive workload can constitute an adverse employment action. See, e.g., Feingold v. New York, 366 F.3d 138, 152-53 (2d Cir. 2004) (finding that assignment of an excessive workload could constitute "adverse action" under disparate treatment framework); Murillo-Roman v. Pension Bds., No. 22-CV-08365-JLR, 2024 WL 246018, at *14 (S.D.N.Y. Jan. 23, 2024) ("'[A] disproportionately heavy workload can constitute an adverse employment action' for retaliation purposes." (gathering cases)). While such conduct as pleaded in the Amended Complaint does not support a plausible adverse employment action for disparate treatment purposes, a substantial increase in workload could dissuade a reasonable worker from making or supporting a charge of discrimination. Although the length of time between this conduct and Plaintiff's last protected activity—the filing of an EEOC charge (Amend. Compl. ¶ 56)—is rather significant (around nine months), unless "the lapse in time is so great that . . . dismissal could be warranted," the question of whether a defendant delayed retaliating until the first opportunity to do so presented itself "is an argument on the merits" that is "best suited to a later stage in the proceedings." McKenzie, 2009 WL 179253, at *5 n.5 (citations omitted). Here, Plaintiff alleges that the overburdening was the result of Defendants' refusal to replace a colleague who departed after Plaintiff had filed his EEOC charge. (Amend. Compl. ¶¶ 63-67.) These facts are sufficient at the pleading stage to support an inference of opportunistic retaliation.

Finally, Plaintiff's termination, which allegedly came "a few days after receiving the right to sue" letter from the EEOC (id. ¶ 69), and approximately one month after Plaintiff's complaint to Munns regarding an allegedly excessive workload (id. ¶ 66), also constitutes an adverse employment action that is well within the window for temporal proximity to support a causal connection for a retaliation claim. See Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006) (citation omitted).

In sum, the motion to dismiss the claims against the Corporate Defendants for retaliation under Section 1981, Title VII, and the NYSHRL for conduct prior to October 11, 2019, is denied to the extent these claims are premised on the allegations concerning (1) the denial of appropriate pay raises in November and December 2020; (2) the assignment of an excessive workload in April and May of 2022; and (3) Plaintiff's termination.  The Motion is granted to the extent that Plaintiff's retaliation claims in Counts 2, 4, and 6 are premised on other conduct.

Post-October 2019 State Law and NYCHRL Retaliation Claims[4]

The standard for a retaliation claim is less demanding under the NYCHRL: "[T]he plaintiff must show that she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013).  As to the causation element, the NYCHRL only requires that the protected activity be a "motivating factor" in the adverse action, and not its "but-for" cause, as would be required under federal law.  Id.; see also Stanley Chin v. N.Y.C. Dep't of Corr., No. 23-CV-5268-AMD-JAM, 2024 WL 2258033, at *3 (E.D.N.Y. May 17, 2024) ("Under the NYCHRL . . . 'a plaintiff need only allege that retaliatory animus played some role in the employer's decision.'" (citation omitted)).

Because "interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall," Mihalik, 715 F.3d at 109, the above conduct found actionable under Title VII, Section 1981, and the pre-October 2019 NYSHRL is

---

[4]     Plaintiff cites Section 8-107(1)(e) in asserting a claim for retaliation under the NYCHRL. (Amend. Compl. ¶¶ 127-28.)  The provision that includes the language quoted by Plaintiff is, however, Section 8-107(7).

necessarily actionable under the NYCHRL and under the NYSHRL for conduct that occurred after October 11, 2019.  Furthermore, courts have found that ostracizing an individual and exclusion from meetings can constitute retaliatory actions, even absent attendant negative consequences, under this more lenient standard.  See, e.g., Bermudez v. City of New York, No. 10-CV-1162-ALC, 2015 WL 1500235, at *12 (S.D.N.Y. Mar. 31, 2015) (gathering cases). Accordingly, the alleged post-July 2021 exclusions from meetings and emails, which followed shortly after Plaintiff's filing of an EEOC Charge, are sufficiently pleaded to move forward as a retaliation claim under the NYCHRL and post-October 2019 NYSHRL standard.

However, the remaining conduct underlying the federal retaliation claims that have been dismissed also fails to state a claim for retaliation under this more lenient standard, for substantially the reasons detailed above: the alleged exclusion, around March 2020, from meetings regarding pandemic staffing did not follow any action by Plaintiff opposing his employer's discrimination, see discussion supra pp. 21-22; and the remaining allegations regarding denials of pay raises plead no plausible connections to complaints about discriminatory treatment.  See discussion supra p. 22.  Retaliation claims based on the alleged March 2020 exclusions and these two alleged denials of a salary increase, as asserted in Counts 6 and 9 of the Amended Complaint under the NYCHRL and the post-2019 NYSHRL, are therefore also dismissed.

Hostile Work Environment Claims

Plaintiff next asserts hostile work environment claims against the Corporate Defendants under Title VII, the NYSHRL, and the NYCHRL as Counts 3, 5, and 8, respectively,

of the Amended Complaint.[5]

Title VII

To state a hostile work environment claim under Title VII, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citation omitted). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999). The first prong must be evaluated on both a subjective and objective basis: "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015) (citation omitted).

Ordinarily, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive," although "a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." Alfano, 294 F.3d at 374 (citations and internal quotation marks omitted). In conducting its review, the Court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Littlejohn, 795 F.3d at 321 (quoting Harris v. Forklift Sys., Inc, 510 U.S. 17, 23

---

[5]    Plaintiff asserts that "Defendants both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violated [sic] of 42 U.S.C. § 1981" but does not assert a hostile work environment claim under that statute.  (See Amend. Compl. ¶ 105.)

(1993)).  On a motion to dismiss, "a plaintiff need only plead facts sufficient to support the

conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable

employee would find the conditions of her employment altered for the worse.'"  Patane v. Clark,

508 F.3d 106, 113 (2d Cir. 2007) (citation omitted).  The Second Circuit has "repeatedly

cautioned against setting the bar too high" at the initial pleading stage.  Terry v. Ashcroft, 336

F.3d 128, 148 (2d Cir. 2003).

   Considering Plaintiff's allegations as a whole, the Court finds that Plaintiff has

proffered sufficient facts to support a viable hostile work environment claim.  The sole element

in dispute is whether Plaintiff has objectively established that the inappropriate conduct alleged

is so severe or pervasive that a reasonable employee would find it to be abusive.  Defendants

contend that the alleged comments were "limited to several alleged jokes," point out that there

are no allegations that racial slurs were used, and that Plaintiff was not threatened, physically or

otherwise, arguing that no objectively reasonable person would have found the workplace

"hostile or abusive."  (Defs. Mem. at 17.)  Moreover, Defendants assert that a number of the

alleged comments are "not about Plaintiff's protected class," nor make any "discernable showing

of animus toward Plaintiff's protected class."  (Docket entry no. 22 ("Reply Mem.") at 6.)

Plaintiff disputes this characterization, and asserts that he was "subjected to a generally racist

and intolerant work environment."  (Pl. Mem. at 16.)

   Read in the light most favorable to Plaintiff, the Amended Complaint suggests a

workplace permeated with unchecked racial and ethnic hostility that could objectively and

subjectively have been perceived as hostile to him.  Plaintiff has alleged at least eight specific

incidents, and continuing epithets and inappropriate comments uttered throughout his

employment by at least one employee, that were clearly based upon his race, color, or national

origin.  Plaintiff alleges that Mitchell, the Assistant General Manager at Riverbay and a supervisor of Plaintiff (Amend. Compl. ¶ 14), began asking Plaintiff why he "did not own a dry-cleaning business like other Korean people" whenever the subject of dry-cleaning arose (id. ¶¶ 22, 24), which was often, given the demographics of Riverbay's commercial property management portfolio (id. ¶ 23), made a similar joke to a colleague prior to a Board meeting, in front of Plaintiff, that Plaintiff "used to work with 'Korean dry cleaners'" (id. ¶ 28), referred to Plaintiff as "Bruce Lee," rather than using his actual name (id. ¶¶ 27, 32), and at one point interrupted a meeting to ridicule Plaintiff in front of other colleagues (id. ¶ 32 ("Look at Bruce Lee over here, look at what he looks like when he smiles, look at his face[.]")).  Arguably the most egregious example alleged by Plaintiff took place on June 9, 2021, when Mitchell made repeated jokes about Plaintiff's color and national origin prior to the start of a meeting of the Riverbay Board of Directors.  (Id. ¶¶ 47-51.)  Defendants Klehammer and Ellison were alleged to have been present and to have made additional jokes regarding Mitchell's comments being reported to human resources.  (Id. ¶¶ 49-50.)

Plaintiff also details repeated incidents in which colleagues who have not been named as defendants in this action made "jokes" or comments that inappropriately associated Plaintiff with the COVID-19 pandemic based upon his Asian heritage.  (Id. ¶¶ 36, 61).  This conduct is alleged to have occurred both before and after Plaintiff reported the comments to Munns, the Director of the Legal Department.  (Id. ¶ 37.)

Although Defendants characterize these continuing comments as "jokes," the Second Circuit has explained that "a work environment may be actionable if the conduct there is either so severe or so pervasive as to alter the working conditions of a reasonable employee." Terry, 336 F.3d at 149 (emphasis in original) (citation omitted).  Here, where Plaintiff has

alleged frequent insulting and racially-charged comments that continued for years—despite

multiple reports and acknowledgement by at least one superior that such comments were

inappropriate—Plaintiff has pleaded sufficient facts to establish that a reasonable person would

find the conduct to be hostile or abusive.  The fact that a number of these comments came from

individuals alleged to be supervisors of Plaintiff "underscore[es] the seriousness of the conduct."

Moore v. DeJoy, No. 18-CV-9967-JPC, 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021)

(citing St. Louis v. N.Y.C. Health & Hosp. Corp., 682 F. Supp. 2d 216, 230 (E.D.N.Y. 2010)).

The motion to dismiss the Title VII for hostile work environment claim, as

asserted in Count 3 of the Amended Complaint, is therefore denied.

### NYSHRL and NYCHRL Hostile Work Environment Claims[6]

The standard for sufficiency of a hostile work environment claim under the

NYCHRL is more relaxed than under its state and federal counterparts.  Bermudez v. City of

New York, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).  A plaintiff must show only "unequal

treatment based upon membership in a protected class."  Nieblas-Love v. N.Y.C. Hous. Auth.,

165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (citation omitted).  In other words, a plaintiff must show

that he was "treated 'less well' because of discriminatory intent."  Colon v. Fashion Inst. of

Tech. (State Univ. of N.Y.), 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (quoting Mihalik v.

Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013))  In evaluating a

hostile work environment claim, the court must look at the "totality of the circumstances."

---

[6]     Plaintiff has asserted claims under Section 8-107(1) of the NYCHRL.  (See Amend.
Compl. ¶¶ 121-25.)  "The NYCHRL does not distinguish between claims of
'discrimination' and 'harassment' or hostile work environment, which is a term of art
borrowed from the more restrictive Title VII jurisprudence."  Mitura v. Finco Servs., Inc.,
712 F. Supp. 3d 442, 452 n.3 (S.D.N.Y. 2024) (citing Williams v. N.Y.C. Hous. Auth., 61
A.D.3d 62, 75 (N.Y. App. Div. 1st Dep't 2009)).

<u>Mihalik</u>, 715 F.3d at 113; <u>see also</u> <u>Williams</u>, 61 A.D.3d at 73-81 (rejecting the federal "severe and pervasive" standard as inconsistent with the NYCHRL's "broad remedial purpose").

Because the Court has found that Plaintiff has adequately alleged a claim for hostile work environment under Title VII, the same conclusion is warranted with respect to the analogous NYCHRL and post-October 2019 NYSHRL hostile work environment claims.  <u>See</u> <u>Mihalik</u>, 715 F.3d at 109 (noting federal civil rights statutes serve as floor below which NYCHRL cannot fall); <u>see also</u> <u>Maiurano v. Cantor Fitzgerald Sec.</u>, No. 19-CV-10042, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021) (discussing elimination of "severe or pervasive" standard for NYSHRL hostile work environment claims brought after 2019 NYSHRL amendments).  The motion to dismiss the claims for hostile work environment under the NYSHRL and NYCHRL, as asserted in Counts 5 and 8 of the Amended Complaint, is therefore denied.

<u>Aiding and Abetting – NYSHRL and NYCHRL</u>

Plaintiff also asserts claims against the Corporate Defendants under section 296(6) of the NYSHRL and section 8-107(6) of the NYCHRL for "aiding and abetting" conduct made unlawful by each relevant chapter of law, <u>i.e.</u>, the discriminatory conduct reviewed at length above.  These claims are asserted as Counts 7 and 10 of the Amended Complaint.

All claims for aiding and abetting as against the Corporate Defendants must be dismissed because the conduct complained of is the subject of the primary claims for liability of the companies.  <u>See</u> <u>Gordon v. APS Contractors Inc.</u>, No. 21-CV-00259-WFK-JRC, 2023 WL 2574740, at *8 (E.D.N.Y. Mar. 20, 2023) (gathering cases for proposition that corporate entities cannot be liable as aiders and abettors under NYSHRL and NYCHRL because such claims are

derivative of primary violation claims).  Counts 7 and 10 are therefore dismissed in their entirety as against the Corporate Defendants.

Individual Liability

Plaintiff also asserts that the Individual Defendants are each liable for discrimination, invoking various theories of liability under Section 1981, the NYSHRL, and the NYCHRL.

Section 1981 Claim[7]

To make out a claim for individual liability under Section 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . Personal liability under Section 1981 must be predicated on the actor's personal involvement." Patterson v. Cnty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004) (citation omitted). Because the amended complaint pleads no actionable disparate treatment under Section 1981, see discussion supra pp. 11-16, no liability can lie under the statute against any of the Individual Defendants.

There is also no basis for individual liability as to the retaliation claims under Section 1981 that have been pleaded sufficiently as against the Corporate Defendants.  As explained above, a key element of a retaliation claim under Section 1981 is a plausible allegation that "the defendant knew of the protected activity." Littlejohn, 795 F.3d at 315-16 (citation omitted).  The only conduct attributed to any of the Individual Defendants that is the basis of a

---

[7]    As noted, Plaintiff does not assert a claim for hostile work environment under Section 1981.  See supra note 5.

viable retaliation claim against the Corporate Defendants is the December 2020 denial by Defendant Mitchell of what appears to have been a discretionary raise.  Plaintiff does not allege that Mitchell knew or should have known of the relevant protected activity, i.e., Plaintiff's complaints to Munns and Cooper regarding alleged discriminatory conduct in April and July 2020, respectively.  (See Amend. Compl. ¶¶ 37, 39.)  Plaintiff, furthermore, does not specify any of the individuals who engaged in the remaining actionable conduct.  (See id. ¶¶ 44-45, 64-66, 69.)  Plaintiff has not pleaded facts suggesting personal involvement by Ellison, Cooper, or Klehammer in any allegedly retaliatory activity.

Count 4 of the Amended Complaint is therefore dismissed in its entirety as against all of the Individual Defendants.


NYSHRL Claims

Plaintiff also asserts NYSHRL claims against that the Individual Defendants for disparate treatment discrimination and hostile work environment under Section 296(1) as Count 5 of the Amended Complaint, for retaliation under Section 296(7) as Count 6, and for aiding and abetting all such discrimination under Section 296(6) as Count 7.

Direct Liability

Courts in this Circuit have routinely found that, under the NYSHRL, an individual defendant may be liable for discrimination, either directly where such individual is considered to be an "employer," N.Y. Exec. L. § 296(1), or where the defendant aided and abetted the unlawful discriminatory acts of others.  Id. § 296(6).  However, the New York Court of Appeals recently clarified that "a corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer" under the NYSHRL, and that the

"ownership/personnel decisions" test that courts had been applying to determine direct individual liability under Section 296(1) was a misapplication of the test for respondeat superior liability of a corporate entity.  See Doe v. Bloomberg L.P., 36 N.Y3d 450, 455 (N.Y. 2021) (explaining the proper interpretation of Patrowich v. Chemical Bank, 63 N.Y.2d 541 (N.Y. 1984)); see also Bueno v. Eurostars Hotel Co., S.L., No. 21-CV-535-JGK, 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) (same).  The claims against the Individual Defendants, as Section 296(1) "employers," for disparate treatment discrimination and hostile work environment under must therefore be dismissed.

Plaintiff also asserts that the Individual Defendants are liable for retaliation under Section 296(7), which does cover individuals, providing that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. L. § 296(7) (emphasis added).  Plaintiff's failure to allege knowledge of his protected activity on the part of any of the Individual Defendants is, however, fatal to Plaintiff's retaliation claims under the NYSHRL, just as it was to those under Section 1981.  See, e.g., Mitura v. Finco Servs., Inc., No. 23-CV-2879-VEC, 2024 WL 232323 (S.D.N.Y. Jan. 22, 2024) (holding that plaintiff's retaliation claims failed under the NYSHRL and NYCHRL because plaintiff had not alleged facts indicating that the relevant defendant "was aware of her complaints about his discriminatory behavior").

Counts 5 and 6 of the Amended Complaint are therefore dismissed in their entirety as against all of the Individual Defendants.

<u>Aiding and Abetting</u>

Individuals may also be held liable for aiding and abetting under Section 296(6) of the NYSHRL, and Plaintiff asserts such a claim against the Individual Defendants in Count 7. Section 296(6) makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." <u>Id.</u> The Second Circuit has construed this language to allow for liability where a co-worker "actually participates in the conduct giving rise to the discrimination claim" under the NYSHRL. <u>Feingold v. New York</u>, 366 F.3d 138, 157-58 (2d Cir. 2004) (citation omitted). The presence of one or more actionable discrimination claims is therefore a necessary predicate for aider and abettor liability. <u>Sowemimo v. D.A.O.R. Sec., Inc.</u>, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999) ("Liability under the [NYS]HRL . . . must first be established as to the employer/principal before an individual may be considered an aider and abettor." (citation omitted)).

Although courts have routinely found that corporate entities cannot be liable for aiding and abetting under the NYSHRL, <u>Gordon v. APS Contractors Inc.</u>, 2023 WL 2574740, at *8 (gathering cases), courts in this Circuit are split as to whether an individual can be held liable for aiding and abetting discrimination where their own conduct gave rise to the discrimination claim against the employer. <u>See</u> <u>Murtha v. N.Y. State Gaming Comm'n</u>, No. 17-CV-10040-NSR, 2019 WL 4450687, at *18 (S.D.N.Y. Sept. 17, 2019) (comparing approaches in this Circuit). In other words, there is a question as to whether an individual may be held liable for aiding and abetting their own conduct. As there has been no apparent resolution of this issue by the New York state courts, this Court is bound by the Second Circuit's holding in <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1317 (2d Cir. 1995), which recognizes a cause of action against individual employee perpetrators under Section 296(6) of the Human Rights Law.

As each of the Individual Defendants either participated in the discriminatory comments that gave rise to liability under the disparate treatment and hostile work environment claims, or allegedly failed to take remedial action in response to reports of discriminatory comments or witnessing such comments,[8] the claims against the Individual Defendants for aiding and abetting disparate treatment and hostile work environment discrimination, as asserted in Count 7, may move forward.  See, e.g., Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 381-84 (S.D.N.Y. 1999) ("[T]he case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under [NYSHRL] § 296(6)."); Romero v. Howard Johnson Plaza Hotel, No. 97-CV-3706-WHP, 1999 WL 777915, at *9 (S.D.N.Y. Sept. 29, 1999) (holding that a reasonable jury could find actual participation where supervisor repeatedly failed to intervene in discriminatory conduct and laughed at some of the conduct, thereby adding "fuel to the fire").

In contrast, only Mitchell is explicitly alleged to have participated in retaliatory conduct, and, as explained above, Plaintiff has not adequately alleged that Mitchell had knowledge of Plaintiff's prior complaints sufficient to establish intent to retaliate.  See discussion supra p. 33-34; see also, e.g., Dodd v. City Univ. of N.Y., 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020) (claim under Section 296(6) requires that the aider and abettor "share the intent or purpose of the principal actor" (citation omitted)).  The Motion is therefore granted as against Count 7, to

---

[8]    While Defendants are correct that aider and abettor liability requires a shared "intent or purpose of the principal actor" (Defs. Mem. at 29 (citation omitted)), viewing the allegations in the light most favorable to the Plaintiff, Plaintiff has adequately alleged that Cooper's failure to take appropriate remedial action in response to Plaintiff's complaints was in furtherance of a shared purpose of the Corporate Defendants.  (See, e.g., Amend. Compl. ¶¶ 39-43 (alleging, in sum, that Defendants had a practice of "conducting perfunctory investigations that routinely failed to substantiate [an employee's complaints of] discrimination/harassment," including terminating employees who continued to complain, and that Cooper had knowingly participated in this practice).)

the extent it is premised on the Individual Defendants allegedly aiding and abetting the

<u>retaliatory</u> conduct this Court has found actionable under the NYSHRL, but otherwise denied.

### NYCHRL Claims

Plaintiff has also asserted NYCHRL claims against the Individual Defendants

directly for discrimination and hostile work environment under Section 8-107(1), for retaliation

under Section 8-107(7),[9] and claims for aiding and abetting discrimination under Section 8-

107(6).  These claims are asserted as Counts 8, 9, and 10 of the Amended Complaint,

respectively.

#### Direct Liability

Unlike the NYSHRL, the NYCHRL provides for direct individual liability.  The

NYCHRL makes it unlawful for "an employer <u>or an employee or agent thereof</u>, because of the

actual or perceived . . . race, . . . color, [or] national origin . . . of any person . . . [t]o discriminate

against such person in compensation or in terms, conditions or privileges of employment."

NYCHRL § 8-107(1)(a) (emphasis added). Under this provision, individuals "may incur liability

only for their own discriminatory conduct."  <u>Doe v. Bloomberg L.P.</u>, 36 N.Y.3d 450, 459 (N.Y.

2021).

As to the discrimination and hostile work environment claims under Section 8-

107(1), each of the Individual Defendants is alleged to have participated directly in the

discriminatory comments, or failed to take sufficient remedial action in response to Plaintiff's

complaints.  (<u>See</u>, <u>e.g.</u>, Amend. Compl. ¶¶ 39-43, 47-51; discussion <u>supra</u> note 8 (discussing

---

[9]     Plaintiff cites Section 8-107(1)(e) in asserting a claim for retaliation under the NYCHRL.
(Amend. Compl. ¶¶ 127-28.)  The provision that includes the language quoted by
Plaintiff is, however, Section 8-107(7).

alleged shared purpose of Cooper and Corporate Defendants in conducting "perfunctory investigations" into discrimination/harassment claims)); see also, e.g., Dillon v. Ned Mgmt, 85 F. Supp. 3d 639, 664 (E.D.N.Y. 2015) (allowing NYCHRL discrimination claim to go forward against supervisors directly where failure to take remedial action could be found to constitute direct involvement in creation of hostile work environment).  While there is only a single instance in which Ellison and Klehammer are alleged to have made comments directed toward Plaintiff, their conduct nevertheless forms part of the basis of the actionable claims under the NYCHRL's broad standard for discrimination, as set forth in detail in the claims against the Corporate Defendants.  See discussion supra pp. 16-17, 27-32; see also Bermudez v. City of New York, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) ("The NYCHRL imposes liability for harassing conduct that does not qualify as severe or pervasive, and questions of severity and pervasiveness are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." (internal quotation marks and citations omitted)); Williams v. N.Y.C. Hous. Auth., 61 A.D. 3d 62, 78-79 (N.Y. App. Div. 1st Dep't 2009) (indicating that a single comment could give rise to liability).  Accordingly, the claims for discrimination and hostile work environment, asserted as Count 8, may move forward against each of the Individual Defendants, and the Motion is denied on this basis.

However, as with the federal and state claims, the claims for retaliation under Section 8-107(7) of the NYCHRL against the Individual Defendants are insufficiently pleaded, insofar as they do not allege any facts suggesting that Mitchell was aware that Plaintiff had made complaints regarding allegedly inappropriate comments, see, e.g., Mitura v. Finco Servs., Inc., No. 23-CV-2879-VEC, 2024 WL 232323 (S.D.N.Y. Jan. 22, 2024) (holding that plaintiff's retaliation claims failed under the NYSHRL and NYCHRL, as plaintiff had not alleged facts

indicated the relevant defendant "was aware of her complaints about his discriminatory behavior"), nor identify who engaged in the other actionable retaliatory conduct.  Count 9 is therefore dismissed in its entirety as against the Individual Defendants as well.

        Aiding and Abetting

        The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is "virtually identical."  Feingold v. New York, 366 F.3d 138, 158-59 (2d Cir. 2004) (citations omitted).  Accordingly, consistent with the above analysis under the NYSHRL, Plaintiff has stated aider and abettor claims against all Individual Defendants for disparate treatment and hostile work environment discrimination, but the claim is dismissed to the extent it is premised on a theory of aiding and abetting retaliation.  See discussion supra pp. 36-38.  The Motion is therefore granted as against Count 10, to the extent it is premised on the Individual Defendants allegedly aiding and abetting the retaliatory conduct this Court has found actionable under the NYCHRL, but otherwise denied.

Remaining Claims

        Plaintiff's final two causes of action, Counts 11 and 12, assert claims against all Defendants for interference with protected rights under Section 8-107(19) of the NYCHRL, and supervisory liability under Section 8-107(13) of the NYCHRL, respectively.

        Supervisory Liability - NYCHRL

        An employer is liable under paragraph (a) of NYCHRL Section 8-107(13) "for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in

violation of any provision of this section other than subdivisions 1 and 2 of this section."

Paragraph (b) of the section imposes liability on an employer for "an unlawful discriminatory

practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or

2 of this section" that meets one of the following three criteria:

> (1) The employee or agent exercised managerial or supervisory
> responsibility; or
> (2) The employer knew of the employee's or agent's discriminatory
> conduct, and acquiesced in such conduct or failed to take immediate and
> appropriate corrective action; an employer shall be deemed to have
> knowledge of an employee's or agent's discriminatory conduct where that
> conduct was known by another employee or agent who exercised
> managerial or supervisory responsibility; or
> (3) The employer should have known of the employee's or agent's
> discriminatory conduct and failed to exercise reasonable diligence to
> prevent such discriminatory conduct.

N.Y.C. Admin. Code § 8-107(13)(a)-(b).  As with the NYSHRL, individual employees do not

qualify as "employers."  Doe v. Bloomberg L.P., 36 N.Y.3d 450, 460 (N.Y. 2021)

("[E]mployees, agents, and others with an ownership stake are not employers within the meaning

of the City HRL." (citation omitted)).

The Corporate Defendants are, however, subject to potential liability under both

paragraphs of this provision of the NYCHRL: under subparagraph (a), for the Individual

Defendants' conduct violating paragraphs (6) and (7), i.e., for all actionable aiding and abetting

and retaliation claims under the NYCHRL; and subparagraph (b), for all conduct for which the

Individual Defendants are directly liable under paragraph (1), as detailed in the preceding

section.

As to liability under paragraph (b), there are sufficient allegations in the Amended

Complaint to support Plaintiff's claim under any of the three subparagraphs.  Subparagraph

(b)(1) provides for strict vicarious liability, meaning there is no need to find that the Corporate

Defendants "'participated' in the offending conduct" in order to be found liable, so long as the

offending conduct was that of an employee or agent with managerial or supervisory

responsibility. Doe, 36 N.Y.3d at 456 (citing Zakrzewska v. New Sch., 14 N.Y.3d 469, 480-81

(N.Y. 2010)). Here, Plaintiff has alleged that all four Individual Defendants "held supervisory

authority, controlling many of Plaintiff's job duties," and that all four "held the power to hire and

fire Plaintiff." (Amend. Compl. ¶¶ 13-17.) These allegations are supported throughout the

Complaint with further allegations regarding the Individual Defendants' control over Plaintiff.

(See, e.g., id. ¶ 43 (alleging Cooper threatened to terminate Plaintiff).) The alleged unlawful

conduct was also allegedly known or should have been known to the Corporate Defendants,

either through direct reporting by Plaintiff of inappropriate comments (id. ¶¶ 37, 39, 52-54), or

through the Individual Defendants witnessing and participating in such conduct (see, e.g., id. ¶¶

32, 47-51). Plaintiff's allegations therefore plausibly support claims against the Corporate

Defendants under paragraph (b).

   The claims asserted as Count 12 against the Individual Defendants for supervisory

liability under the NYCHRL are therefore dismissed, but the claims against the Corporate

Defendants, asserted as Count 12, may move forward under both paragraphs (a) and (b) of

Section 8-107(13) based on the conduct by the Individual Defendants that has been found

actionable and sufficiently pleaded under the NYCHRL.


  Interference with Protected Rights - NYCHRL

   Section 8-107(19) of the NYSHRL provides that:

> It shall be an unlawful discriminatory practice for any person to coerce,
> intimidate, threaten or interfere with, or attempt to coerce, intimidate,
> threaten or interfere with, any person in the exercise or enjoyment of, or
> on account of such person having aided or encouraged any other person in

> the exercise or enjoyment of, any right granted or protected pursuant to this section.

N.Y.C. ADMIN. CODE § 8-107(19).  Plaintiff cites two incidents in the Amended Complaint as actionable interference: Defendant Cooper's alleged threat to terminate Plaintiff based on his refusal to "follow Defendants' practice of unsubstantiating and terminating [discrimination/harassment] complainants" (Pl. Mem. at 17-18 (citing Amend. Compl. ¶ 43)), and an incident in which Riverbay's Director of Procurement "warned Plaintiff about what Klehammer was saying about 'Plaintiff, and what Klehammer was going to do to him,' which Plaintiff construed as a threat to his employment status'" (Pl. Mem. at 17-18 (citing Amend. Compl. ¶ 68)).

          The Court has no jurisdiction to adjudicate a claim under this provision based upon the first incident cited by Plaintiff, which Plaintiff identifies as being provided for "example only."  (Amend. Compl. ¶ 43.)  While Plaintiff's claims under the NYSHRL and NYCHRL based upon race, color, or national origin discrimination against him personally fall within the Court's supplemental jurisdiction, as these claims "derive from a common nucleus of operative fact" as the federal statutory claims asserted, Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (citation omitted), claims regarding Plaintiff's attempts to substantiate another individual's complaints of sexual harassment share too little factual overlap to "form part of the same case or controversy."  28 U.S.C.A. § 1367(a) (Westlaw through P.L. 118-82); see Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) ("In determining whether two disputes arise from a 'common nucleus of operative fact,' [courts] have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" (citation omitted)).

As to the second incident, Plaintiff's subjective belief about the meaning of an alleged partial statement from Defendant Klehammer, repeated to Plaintiff by another colleague, is not sufficient to plausibly state a claim against Klehammer for "intimidating, threatening, or interfering with" the exercise of Plaintiff's rights under the NYCHRL, or attempting to do so. See, e.g., Sletten v. Liquidub, Inc., No. 12-CV-1146-NRB, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (dismissing claims under Section 8-107(19) where "threat" was premised on "unwarranted logical leap" based on plaintiff's subjective understanding of the relevant alleged events).

Count 11 of the Amended Complaint is therefore dismissed in its entirety.

Motion to Strike

Defendants have also moved to strike paragraphs 42 and 43 of the Amended Complaint, arguing that they reveal material that is protected by the attorney-client privilege. These paragraphs contain allegations regarding Plaintiff's investigation of another Riverbay employee's complaints of sexual harassment (Amend. Compl. ¶ 43), which Plaintiff undertook pursuant to his role as Associate General Counsel of Riverbay; and an alleged pattern and practice of mishandling employees' harassment and discrimination complaints (id. ¶ 42). Plaintiff opposes the motion to strike, arguing that it is untimely, and that such disclosure is proper and forms the basis of meritorious litigation.  (Pl. Mem. at 21-25.)

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" sua sponte or on motion by a party where such motion was made "before responding to a pleading, or if a response is not allowed, within 21 days after being served with the pleading."

"Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (citation omitted).  Courts have nevertheless found it appropriate to strike allegations "[i]f the evidence to be offered in support of the allegation would be inadmissible at trial."  Lehman Bros. Commercial Corp. v. China Int'l United Petroleum & Chems. Co., No. 94-CV-8304-JFK, 1995 WL 380106, at *2 (S.D.N.Y. June 26, 1995) (gathering cases).

Defendants are correct that the motion to strike was timely,[10] but the motion is nevertheless denied.  As the party asserting the attorney-client privilege, Defendants bear the burden of establishing that the privilege applies to the challenged allegations.  In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citation omitted).  The attorney-client privilege applies where: "(1) a communication between client and counsel . . . (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."  In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (citation omitted). The attorney-client privilege applies to communications between in-house counsel and a corporation's employees for the purpose of obtaining legal advice for the company.  Upjohn Co. v. United States, 449 U.S. 383, 394 (1981).

Defendants' contentions that the material contained in paragraph 42 is privileged are based on speculation as to how that information would have come to Plaintiff (see Defs. Mem. at 25), and it is not clear at this stage of the litigation whether the investigation discussed in paragraph 43 was and is confidential, nor whether Plaintiff's subsequent conversation with

---

[10]     The motion to strike was included with Defendants' timely pre-answer motion to dismiss the complaint (docket entry no. 12), and re-asserted with the motion to dismiss the Amended Complaint (docket entry no. 18).  See FED. R. CIV. P. 12(f)(2) (Court may act to strike material "on motion made by a party . . . before responding to the pleading . . . ." (emphasis added)).

Defendant Cooper was "made for the purpose of obtaining legal advice" for Riverbay.  (See Amend. Compl. ¶ 43.)  The Second Circuit has cautioned that "[e]videntiary questions . . . should especially be avoided at such a preliminary stage of the proceedings[.]"  Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).  Here, it is not clear from the "sterile field of the pleadings," id., whether the privilege properly applies, and, as the material is potentially relevant to Plaintiff's claims of retaliation, see Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 149 (2d Cir. 2012) ("To be sure, proof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case."), the motion to strike is premature and is denied without prejudice to renewal.

CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss in granted in part and denied in part, and the motion to strike is denied.

Specifically, the following claims are dismissed in their entirety as against the Corporate Defendants: the first, fourth, and fifth causes of action for disparate treatment discrimination under Title VII, Section 1981, and the pre-amendment NYSHRL; the seventh and tenth causes of action for aiding and abetting discrimination under the NYSHRL and the NYCHRL; and the eleventh cause of action for interference with protected rights under the NYCHRL.

The following claims are dismissed in their entirety as against the Individual Defendants: the fourth cause of action for discrimination and retaliation under Section 1981; the fifth and sixth causes of action for discrimination, hostile work environment, and retaliation

under the NYSHRL; the ninth cause of action for retaliation under the NYCHRL; and the eleventh and twelfth causes of action for interference with protected rights and supervisory liability under the NYCHRL.

The motion to dismiss is denied as to the remaining claims to the extent they are premised on conduct found to be pleaded sufficiently, as detailed at length above.

Plaintiff is granted permission to move for leave to replead the dismissed claims in a second amended complaint, which motion must be filed within 30 days from the date of this Opinion and Order.  The proposed second amended complaint must be attached to the motion (clean and blacklined versions) and must plead plausibly facts supporting the dismissed claims and remedying the defects identified in this Opinion and Order.  Should Plaintiff fail to file a motion for leave to amend within 30 days of the issuance of the date hereof, or should such motion be denied as futile, all claims dismissed by this Opinion and Order will be dismissed with prejudice.

Docket entry no. 18 is resolved.

SO ORDERED.

Dated: September 27, 2024
      New York, New York

                                    /s/ Laura Taylor Swain
                                   LAURA TAYLOR SWAIN
                                   Chief United States District Judge